IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MITCHELL HANEY,

        Plaintiff,             CIV. S. 06-0121 GGH

    vs.

MICHAEL J. ASTRUE,[1]          ORDER
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Remand on the Pleadings is granted, the Commissioner's Motion for Summary Judgment is denied, and this matter is remanded to the ALJ for further findings as directed in this opinion. The Clerk is directed to enter judgment for plaintiff.

\\\\\

---

[1] Michael J. Astrue became Commissioner on February 12, 2007. Accordingly, he should be substituted as defendant in this suit. Fed. R. Civ. P. 25(d)(1). No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, born May 27, 1959, applied for disability benefits on December 17, 2003.  (Tr. at 50.)  Plaintiff alleged he was unable to work since June 27, 2003,[2] due to bipolar disorder and depression.  (Tr. at 50, 58.)  In a decision dated October 5, 2005, ALJ Antonio Acevedo-Torres determined that plaintiff was not disabled.[3]  The ALJ made the following findings:

> 1.   The claimant has not engaged in substantial gainful activity after June 27, 2003.
>
> 2.   The medical evidence establishes that the claimant has a bipolar disorder and personality disorders, and

---

[2]  At the hearing, plaintiff amended his onset date from the original date of March 30, 1993, because June 27, 2003, was when he became "clean and sober," according to his counsel. (Tr. at 203, 199.)

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

amphetamine and alcohol dependence, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3.    The claimant's subjective complaints are not consistent with the evidence of record and not fully credible.

4.    The claimant has the residual functional capacity for work that does not involve complex tasks.

5.    The claimant cannot perform his past relevant work.  The claimant is 46 years of age and has a high school education.

6.    Rule 204.00, Appendix 1, Subpart P, Regulations No. 4, direct that the claimant is not disabled, as there are a significant number of jobs that he can perform.

7.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(e) and 416.920(e)).

(Tr. at 18-19.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether the ALJ Incorrectly Attributed Plaintiff's Mental Health Problems to Past Drug and Alcohol Use; B.  Whether the ALJ Failed to Adequately Address Plaintiff's Credibility; C.  Whether the ALJ Improperly Disregarded Treating Doctor's Reports; and D.  Whether the ALJ Failed to Fully Develop the Record.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

1   (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical

2   testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

3   2001) (citations omitted). "Where the evidence is susceptible to more than one rational

4   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

5   Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

6   ANALYSIS

7       A.  The ALJ Improperly Disregarded Treating Doctor's Reports

8           Plaintiff alleges that the ALJ improperly rejected the treating reports of plaintiff's

9   psychiatrist, Dr. Jahmil.

10          The weight given to medical opinions depends in part on whether they are

11  proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

12  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[4]  Ordinarily,

13  more weight is given to the opinion of a treating professional, who has a greater opportunity to

14  know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

15  Cir. 1996).

16          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

17  considering its source, the court considers whether (1) contradictory opinions are in the record;

18  and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

19  a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

20  81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

21  be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

22

23      [4] The regulations differentiate between opinions from "acceptable medical sources" and
    "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
24  psychologists are considered "acceptable medical sources," and social workers are considered
    "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
25  when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
    regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
26  accordingly are given less weight than opinions from "acceptable medical sources."

4

1  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

2  examining professional's opinion (supported by different independent clinical findings), the ALJ

3  may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

4  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

5  weigh the contradicted treating physician opinion, <u>Edlund v. Massanari</u>, 253 F.3d 1152 (9th Cir.

6  2001),[5] except that the ALJ in any event need not give it any weight if it is conclusory and

7  supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999)

8  (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>,

9  881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

10 insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

11
12
13
14
> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir.1990); <u>Gallant v. Heckler</u>, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.

15 <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).

16         The records in this case for the most part consist of clinical treating records from

17 various Sacramento County supported mental health clinics, beginning in July, 2003, around the

18 time plaintiff claims he began his sobriety (and alleged an onset date) to May, 2005.  Within that

19 group are records from Human Resources Consultants ("HRC"), dated May 28, 2004 to May 19,

20 2005, which the ALJ has rejected.  Instead the ALJ apparently relied on the earlier clinic records,

21 from July, 2003 to May, 2004, as well as two DDS reports which were dated April 22, 2004 and

22 September 1, 2004, and which did not have the benefit of the HRC records for review.  Because

23
24

---

25         [5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26 (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1 these two reports were by non-examining psychiatrists,[6] the ALJ only gave them "some weight."

2 (Tr. at 17.)

3             The ALJ rejected the HRC records for the following reasons:

4             In September 2004, examination did not reflect any important
              findings, and the claimant did not allege any serious symptoms.
5             Nonetheless, a psychiatric [sic] completed an assessment sheet and
              assigned the claimant a GAF of 50 (serious difficulty in making
6             social and occupational adjustments).  Nevertheless, given that this
              physician has not submitted any objective evidence which supports
7             this opinion, and that this opinion appears to be inconsistent with
              the claimant's report of what he can do, the Administrative Law
8             Judge rejects this assessment.  Moreover, records in December,
              2004, and May 2005, do not contain any new or material objective
9             clinical findings (Exhibit 11F).

10 (Tr. at 15-16.)

11            In fact, the so called unimportant findings referred to by the ALJ, dated

12 September, 2004, were the diagnoses of bipolar disorder, and antisocial personality disorder,

13 along with a GAF score of 50,[7] by Dr. Jahmil.  (Tr. at 167.)  Although this report is a form, it is

14 accompanied by handwritten notes of the same date, indicating that this treating psychiatrist

15 spent 61 minutes with plaintiff including time spent on documentation.  (Tr. at 184-86.)  The

16 ALJ may have missed these notes because they are separated in the record by notes from other

17 visits during that time period.

18            Other notes from HRC reflect that plaintiff was assessed a GAF score of 50 on

19 four separate occasions between May 28, 2004 and May 19, 2005.  (Tr. at 167, 173, 182, 187.)

20

21            [6] Plaintiff questions the specialty of these physicians; however, defendant has provided
the source which categorizes them as psychiatrists.  See Program Operations Manual System
22 (POMS) DI 26510.090(B), www.https://s044a90.ssa.gov (identifying source code 37 as
psychiatry); (tr. at 26, 27.)

23
            [7] GAF is a scale reflecting the "psychological, social, and occupational functioning on a
24 hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 41-50 indicates:
25 "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR
any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to
26 keep a job)."

1    He was also assessed a GAF score of 55 on December 2, 2004, (Tr. at 183), and a GAF score of

2    65 on March 31, 2005.[8]  The most recent GAF score in this set of records is dated May 19, 2005,

3    and was 50 at that time.  (Id. at 173.)

4            These records are at odds with the earlier clinical records which the ALJ did not

5    reject, and which show that plaintiff was doing fairly well with treatment. For example, on

6    December 17, 2003, it was noted that plaintiff was making "very satisfactory progress" at a

7    residential facility for mentally ill patients.  (Tr. at 128.)  On September 15, 2003, plaintiff

8    reported that he was sleeping well, that his appetite was good, and that his mood was "much

9    better.  Pretty even now."  (Id. at 115.)  An undated record, probably reported around August 16,

10   2003, diagnosed plaintiff with bipolar disorder, amphetamine and alcohol dependence, antisocial

11   traits, and assigned a GAF score of 50.  (Id. at 118.)  Later records from 2004 indicate that

12   plaintiff's condition was not stable.  On February 27, 2004, plaintiff was slightly anxious, was

13   sleeping and eating better, but described his mood "a little up and down."  (Id. at 162.)  On

14   March 26, 2004, plaintiff stated that he needed something to do and might want to go back to

15   work.  (Id. at 161.)

16           Nevertheless, the more recent HRC records, which cover the last year for which

17   there is treatment in the record, seem to reflect a decline, or at least instability, in plaintiff's

18   mental state.  Plaintiff continued to be diagnosed with bipolar disorder and antisocial personality

19   disorder, in addition to several GAF scores of 50 during this time period.  (Tr. at 167.)  It should

20   be clearly noted that a GAF of 50 reflects in part a serious impairment such as inability to keep a

21   job.  This numerical assessment which was made several times during this period should not be

22   ignored.  Plaintiff was taking Depakote, but was undergoing a lot of mood swings, anxiety,

23

24        [8]  According to the DSM IV, a GAF of 51-60 indicates moderate symptoms such as flat
     affect, circumstantial speech, occasional panic attacks, or moderate difficulty in functioning as in
     few friends or conflicts with peers or co-workers.  A GAF of 61-70 indicates "some mild
25   symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational,
     or school functioning (e.g., occasional truancy, or theft within the household), but generally
26   functioning pretty well, has some meaningful interpersonal relationships."  DSM IV at 32.

insomnia, poor concentration, auditory hallucinations, and anger outbursts. (Id. at 168, 169.)  It was noted that these symptoms interfered with plaintiff's daily functioning. (Id. at 169.)  These notations were the most recent, from May 19, 2005.  In contrast, on March 31, 2005, plaintiff's mental status exam was within normal limits. (Id. at 180.)  However, a few months earlier, on December 2, 2004, plaintiff reported that he was not sleeping at night unless he took Benadryl, that he feels depressed, and was not going out. (Id. at 183.)

The ALJ's reasons for rejecting the HRC records are deficient.  First, the etiology of mental illness is not always well known.  Some illnesses may have an objective cause, such as genetics or trauma, but for the most part there is no objective component that can be measured.  Rather, the objective assessment should be left to mental health professionals who have the opportunity to interview and observe the plaintiff.

Second, the ALJ's reliance on two DDS doctors who did not examine plaintiff and did not have the opportunity to review the HRC records, is inadequate.

Third, mental illness is not a disease that can be found or ruled out from picking and choosing through the records.  The records need to be viewed as a whole so that a composite picture of the plaintiff's condition can be seen over a period of time.  When this record is reviewed as a whole, it does not appear that plaintiff is consistently well.  Nor does it appear that plaintiff is necessarily disabled.  Rather, the ALJ did not give adequate reasons to reject a set of the most recent records available on plaintiff's condition, and to rely on two DDS physicians who did not have access to these most recent records.

Finally, it should be noted that the clinical records upon which the ALJ apparently relies, although indicating satisfactory progress and that plaintiff was doing well in 2003 and early 2004, indicated that his GAF was 50 at this time also, and therefore his condition was not as clear as the ALJ suggests. (Id. at 118.)  The ALJ's reasons for rejecting the treating records of Dr. Jahmil and HRC were not specific and legitimate.  If the ALJ thought that these records were supported by minimal clinical findings as he appears to suggest, he should have further

1    developed the record.

2              Therefore, this case is remanded for further development.  This order of remand

3    does not preclude the taking of additional evidence or testimony; however, should the ALJ

4    determine to reject opinions of medical sources on the basis of lack of objective evidence to

5    support them, the ALJ shall specify the objective evidence pertinent to plaintiff's alleged

6    impairment.

7              B.  Whether the ALJ Incorrectly Attributed Plaintiff's Mental Health Problems to Past

8    Drug and Alcohol Use

9              Plaintiff claims that the ALJ incorrectly listed amphetamine and alcohol

10   dependence as impairments in his findings.  This finding was despite the fact that plaintiff

11   specifically changed his onset date by about ten years, to June 27, 2003 as the date was when he

12   stopped using drugs and alcohol.

13             The ALJ did make such an enumerated finding after noting in the body of his

14   opinion that "any serious limitations that the claimant may experience appear to be directly

15   related to his drug abuse."  (Tr. at 16.)  The ALJ then cited the statutes and regulations pertaining

16   to analysis of drug and alcohol abuse.  (Id.)  He then summarily concluded that "the evidence of

17   record, including the claimant's statements, shows that the severity of the claimant's symptoms

18   decreased, and his mental status improved after he stopped using drugs and alcohol."  (Id. at 16-

19   17.)

20             Unfortunately, the ALJ did not correctly analyze this issue under Bustamante v.

21   Massanari, 262 F.3d 949 (9th Cir. 2001), which sets forth the procedure to be followed to

22   determine whether drug or alcohol addiction is a contributing factor material to disability

23   pursuant to 42 U.S.C. § 423(d)(2)(C).  Although it appears from the record that plaintiff's drug

24   and alcohol dependence is well in remission, if the ALJ determines on remand that such

25   addiction is active, then he shall perform a Bustamante analysis.

26   \\\\\

9

1    C.  Whether the ALJ Rejected Plaintiff's Testimony Without Providing Legally Sufficient

2  Reasons

3          The court will not address this issue at the present time as it may be affected by

4  the remand.  Nevertheless, the ALJ shall either supplement the credibility analysis on remand as

5  appropriate in light of newly acquired evidence, or re-analyze this issue based on the current

6  record, if the ALJ determines not to reject the HRC records.

7  CONCLUSION

8          Accordingly, plaintiff's Motion for Remand on the Pleadings is GRANTED

9  pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's Cross Motion for

10  Summary Judgment is DENIED, and this matter is remanded for further findings in accordance

11  with this order.  The Clerk is directed to enter Judgment for plaintiff.

12  DATED: 7/3/07

13                                            /s/ Gregory G. Hollows

                                             _____
14                                            GREGORY G. HOLLOWS
                                             U.S. MAGISTRATE JUDGE
     GGH/076
15   Haney0121.ss.wpd

16

17

18

19

20

21

22

23

24

25

26